UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARTIN A. MOCK,

    Plaintiff,

v.

UNITED PARCEL SERVICE, INC.,

    Defendant.
_____/

File No.  5:04-CV-96

HON. ROBERT HOLMES BELL

# **O P I N I O N**

Plaintiff Martin A. Mock filed this action in state court against his former employer, United Parcel Service, Inc. ("UPS"), alleging wrongful discharge and gender and race discrimination in violation of the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq*. Defendant removed the action to federal court. This matter is before the Court on Defendant's motion to dismiss and for summary judgment.

## I.

Plaintiff was born on February 9, 1951. Plaintiff was continuously employed by UPS from April 9, 1984 to January 30, 2004, as a driver of delivery trucks and delivery person. Plaintiff was a member of the International Brotherhood of Teamsters ("Union"). His employment was subject to the terms of a collective bargaining agreement ("CBA"). Article 17 of the CBA governs discharge or suspension. Article 17 permits immediate suspension or discharge for eight enumerated offenses and "(i) other serious offenses." (Def. Ex. 5).

UPS has a professional conduct and anti-harassment policy, the violation of which may result in termination.[1]  (Def. Ex. 6).

On January 27, 2004, Plaintiff entered the men's restroom while Diana Sitko, a female porter or custodian, was cleaning it.  After Plaintiff left the restroom Sitko was upset and reported Plaintiff's conduct to her supervisors.  The specifics of her complaint are contained in the written statement she signed on February 4, 2004:

> On Tuesday morning, January 27, 2004, at approximately 7:20 AM. I was cleaning the men's restroom in the north center on the south side.  I had put up a "Closed" sign at the top of the landing.  At approximately 7:30 AM, Marty Mock came into the restroom.  He said "Good morning Diana" to which I replied "Marty, this restroom is closed.  Use the other one."  I was starting to clean the sinks and he asked me if I got JD's job.  I told him yes.  Then he asked who got my job and I said Hal Hosey."  Then I said "Marty, I'm trying to clean up here, please leave."  He then said "I'm sorry" and continued talking.  I turned around from the sink to tell him again to leave and he was standing in front of the urinal on the right, with his hands down in front of his pants and his head turned around to talk to me. When I saw this I ran into a stall and started screaming "What are you doing????  I don't even want to hear your apologies!!! I am so disgusted! Get out of here!!!"  I stayed in the stall.  A few seconds later he washed his hands and dried them then left without saying anything else.  I went down the stairs and saw that my "Closed" sign had been moved so he could get up the stairs.

---

[1]UPS has a Professional Conduct and Anti-Harassment Policy ("Anti-Harassment Policy") which "prohibits unprofessional and discourteous actions, even if those actions do not constitute unlawful harassment."  (Def. Ex. 6).  The policy is a zero-tolerance policy. (Brockhaus Dep. at 14).  The policy provides:

> UPS will take immediate and appropriate corrective action whenever it determines that harassment has occurred.  Any employee who violates this policy may be subject to termination or other disciplinary action.

(Ex. 6).  Violations of the Anti-Harassment Policy fall under the discharge and suspension provisions of Article 17, section (i) of the CBA.  (Parker Dep. at 16).

2

> I reported this incident to Michelle first then Matt Young. I was in tears the whole time. Matt took me into Dan Park's office a little later in the morning and the whole incident was reported to him. I relayed to Matt and Dan how upset I was about the whole incident. I felt totally humiliated.

(Def. E. 10, Sitko statement).

Craig Brockhaus, UPS Center Manager, investigated Sitko's complaint. On January 30, 2004, he conducted a meeting attended by Plaintiff, a Union Steward, and a friend. UPS Division Manager Bruce Hulteen attended the meeting by telephone. (Mock Dep. at 73-74). After hearing Plaintiff's version of the events Hulteen advised Plaintiff that he would not be working that day. (Mock Dep. at 74). Plaintiff understood that he had been suspended or terminated. (Mock Dep. at 79-80).

By letter dated February 3, 2004, UPS gave Plaintiff written notice of his termination from employment. The letter, signed by Hulteen, stated:

> This letter is to serve as the official notification that your employment with United Parcel Service was terminated effective January 30, 2004.
>
> The reason for your termination is in accordance with Article 17, Section (i), other serious offenses, of the CRT Supplemental Agreement. Specifically, violation of the UPS professional conduct and anti-harassment policy.

(Def. Ex. 4, UPS letter of 2/3/04).

At the time of his discharge Plaintiff was 52 years old and had been working for UPS for 18 years. Plaintiff initiated a grievance through his Union and requested to be reinstated and made whole. In his grievance Plaintiff stated that he merely walked over to the urinal, and then turned and left the restroom. He denied urinating, he denied moving the "closed"

sign, and he could not recall whether he washed his hands. (Def. Ex. 10, Pl.'s grievance). A local hearing was held on Plaintiff's grievance on February 6, 2004. Both Plaintiff and Sitko attended the hearing and presented their sides of the story. (Mock Dep. at 81). According to Plaintiff, at the conclusion of the hearing Hulteen decided to refer the matter to the state panel and to continue Plaintiff's termination. (Mock Dep. at 82-84). A hearing before the state panel was conducted on February 19, 2004. The state panel consisted of four UPS members and four Teamsters members. At the conclusion of the hearing the State Panel denied Plaintiff's grievance. (Mock Dep. at 85-86). Plaintiff's route was filled by another male driver.

On June 7, 2004, Plaintiff initiated this action in the Ingham County Circuit Court alleging wrongful termination as well as gender and age discrimination. Defendant removed the action to this Court on the basis of diversity jurisdiction as well as federal question jurisdiction.

## II.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If Defendants carry their burden of showing there is an absence of evidence to support a claim,

4

then Plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

"On summary judgment, all reasonable inferences drawn from the evidence must be viewed in the light most favorable to the parties opposing the motion." *Hanover Ins. Co. v. American Eng'g Co.*, 33 F.3d 727, 730 (6th Cir. 1994) (citing *Matsushita*, 475 U.S. at 586-88). Nevertheless, the mere existence of a scintilla of evidence in support of Plaintiff's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for Plaintiff. *Id. See generally, Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

**III.**

Defendant has moved to dismiss Count I on the basis that Plaintiff's wrongful discharge claim is preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). Plaintiff concedes that his wrongful discharge claim would require interpretation of the CBA, and that it is therefore preempted. (Pl. Resp. Br. at 11; Pl. Suppl. Br. at 3). The Court will accordingly grant Defendant's motion to dismiss Count I.

Defendant has also moved for summary judgment on Counts II and III on the basis that Plaintiff has no direct evidence of discrimination and is unable to make out a prima facie case of discrimination. Plaintiff has agreed that there is insufficient evidence to support a

claim that Plaintiff's age was a determining factor in his termination, and has conceded that his age discrimination claim is properly subject to dismissal. (Pl. Supp. Br. at 6). The Court will accordingly grant Defendant's motion for summary judgment on Count III of Plaintiff's complaint.

The only remaining count is Count II, alleging gender discrimination in violation of the Elliott-Larsen Civil Rights Act, M.C.L. § 27.2101 *et seq*. Plaintiff opposes Defendant's motion for summary judgment on Count II.

The Elliott-Larsen Civil Rights Act prohibits certain forms of discrimination in the workplace, including discrimination on the basis of gender. M.C.L. § 37.2202(1)(a); *Elezovic v. Ford Motor Co.*, 472 Mich. 408, 419; 697 N.W.2d 851 (2005). A plaintiff may prove discrimination by direct or circumstantial evidence. *DeBrow v Century 21 Great Lakes, Inc.*, 463 Mich. 534, 539-540; 620 N.W.2d 836 (2001). "Direct evidence" is "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Sniecinski v. Blue Cross and Blue Shield of Michigan*, 469 Mich. 124, 132-33, 666 N.W.2d 186 (2003) (quoting *Hazle v. Ford Motor Co.*, 464 Mich. 456, 462, 628 N.W.2d 515 (2001))."

Plaintiff concedes that his case is circumstantial in nature. (Pl. Suppl. Br. at 4). "In cases involving indirect or circumstantial evidence, a plaintiff must proceed by using the burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93

S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Sniecinski*, 469 Mich. at 133-34.  Under this approach, a plaintiff is required to present a prima facie case of discrimination.  *Id.* at 134.

To establish a prima facie case of gender discrimination an employee must be shown to have been

> (1) a member of a protected class, (2) subject to an adverse employment action, [and] (3) qualified for the position, and that (4) others, similarly situated and outside the protected class, were unaffected by the employer's adverse conduct.

*Lytle v. Malady*, 458 Mich. 153, 181, 579 N.W.2d 906 (1998) (quoting *Town v. Michigan Bell Telephone Co.*, 455 Mich. 688, 695, 568 N.W.2d 64 (1997)).

Once a plaintiff has presented a prima facie case of discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  *Sniecinski*, 469 Mich. at 134.  If the defendant produces such evidence, the presumption is rebutted, and the burden shifts back to the plaintiff to show that the defendant's reasons were not the true reasons, but a mere pretext for discrimination.  *Id.*

In this case Plaintiff is asserting a claim of reverse-gender discrimination: he asserts that he received adverse treatment because he is a man, and that women who were similarly situated were treated more favorably.  Plaintiff easily satisfies the first three elements of his prima facie case: he is a male, he suffered an adverse employment action in that he was terminated, and at the time of his termination, he was otherwise qualified for his job as a delivery driver.

With respect to the fourth element, "Plaintiff must present sufficient evidence to permit a reasonable juror to find that for the same or similar conduct [he] was treated differently from a similarly situated [female] employee." *Lytle*, 458 Mich. at 181. To show that an employee was similarly situated, the plaintiff must prove that all of the relevant aspects of his employment situation were nearly identical to those of another employee's employment situation. *Smith v. Goodwill Industries of West Michigan, Inc.*, 243 Mich. App. 438, 449, 622 N.W.2d 337 (2000).

Plaintiff contends that similarly situated employees are those who are subject to the Anti-Harassment Policy. Plaintiff contends that this policy has been used to terminate more men than women.[2] According to Plaintiff, this disparity creates a question of fact as to whether Defendant is disproportionately inclined to use this policy against male employees.

Plaintiff cannot meet his burden of proving the fourth element of his prima facie case by relying on a statistical disparity. The prima facie case calls for comparison to one or more individuals, not to percentages.

The only individual Plaintiff has identified as being similarly situated is Diana Sitko, the individual who complained about his behavior. Plaintiff contends that when he, a male, entered the men's restroom, a trier of fact could reasonably determine both that it behooved the female to leave the room and that her failure to do so in fact amounted to harassment of

---

[2] According to Plaintiff, from 2002 to 2004, Defendant's rank and file employees were 80.7% male and 19.3 % female. Of those terminated by the invocation of the anti-harassment policy, 93.4% were male and 6.5% were female.

8

Plaintiff. Plaintiff contends that because no adverse employment action was taken against the female who was similarly situated, he has met the fourth prong of his prima facie case.

Plaintiff and Sitko were not similarly situated. The relevant aspects of their employment situations were not nearly identical. UPS believed Plaintiff was the harasser and that Sitko was the victim. A complaint had been filed against Plaintiff for harassment which required a response from UPS. No complaint had been filed against Sitko for harassment, so no response was required from UPS regarding her conduct. Moreover, the relevant conduct of Plaintiff and Sitko was not at all similar. Sitko was properly in the men's restroom for purposes of performing her job. Plaintiff, on the other hand, came into the restroom when it was closed for cleaning. Even if, for purposes of this motion, the Court assumes that Sitko failed to put out a "closed for cleaning" sign, Sitko entered the restroom first, when it was empty. Plaintiff, on the other hand, was aware that Sitko was in the restroom for a legitimate work purpose when he approached the urinal. Finally, unlike Sitko, Plaintiff never complained that he had felt harassed by Sitko's presence. There is simply no basis for considering Plaintiff and Sitko to be similarly situated.

The fourth element can also be met by proof that the plaintiff was replaced by one who was not a member of the protected class. *Feick v. Monroe Co.*, 229 Mich. App. 335, 338, 582 N.W.2d 207 (1998). In this case, however, the evidence is undisputed that Plaintiff was not replaced by a female. Plaintiff's former route is being driven by a male. (Brockhaus Dep. at 42, 50-51; Resp. to Interrog. #4).

9

Because Plaintiff has no direct evidence of gender discrimination, and because Plaintiff cannot satisfy the fourth element of his prima facie case, Defendant is entitled to summary judgment on Plaintiff's gender discrimination claim.

Furthermore, even if Plaintiff had made out a prima facie case, Defendant has articulated a legitimate, nondiscriminatory basis for his termination. That basis is the violation of the anti-harassment policy, which is a serious offense under the CBA that can lead to immediate termination.

Plaintiff has not come forward with any evidence to create an issue of fact as to whether the articulated reason was not the true reason, but a mere pretext for discrimination. A plaintiff can establish that a defendant's articulated legitimate, nondiscriminatory reasons are pretextual in one of three ways:

> (1) by showing the reasons had no basis in fact, (2) if they have a basis in fact, by showing that they were not the actual factors motivating the decision, or (3) if they were factors, by showing that they were jointly insufficient to justify the decision.

*Feick v. County of Monroe*, 229 Mich. App. 335, 343, 582 N.W.2d 207, 212 (1998) (citing *Dubey v. Stroh Brewery Co.*, 185 Mich. App. 561, 462 N.W.2d 758 (1990)).

Plaintiff attempts to raise issues of fact regarding the stated reasons by asserting that he did not move the sign and that he did not in fact urinate. Whether or not Plaintiff moved the sign or urinated is irrelevant to this Court's inquiry. This Court's inquiry is limited to ascertaining whether UPS believed Plaintiff was guilty of harassing Sitko and whether this belief was the reason for his discharge. The issues of what precisely Plaintiff did or did not

10

do, or whether he was in fact guilty of harassment is not before this Court.  *See Elrod v. Sears, Roebuck and Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (cited in *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 462 (6th Cir. 2004).

Plaintiff was terminated for violating the anti-harassment policy, not for urinating. (See Termination letter).  Although Brockhaus testified that his suspicion that Plaintiff had urinated formed a part of his reason for terminating him, he acknowledged that even Sitko did not know for certain if Plaintiff had urinated, and he would have terminated Plaintiff even if he had known that Plaintiff did not in fact urinate, but had only implied that he had. (Brockhaus Dep. at 54, 57).

UPS's belief that Plaintiff violated the anti-harassment policy was reasonable.  At the hearing before the state panel UPS made the following argument:

> What happened that morning was unacceptable and unprofessional in many respects.  The Grievant knew she was in the rest room cleaning, he addressed her and initiated conversation with her has he proceeded toward the urinal.  He did not respond to her requests to leave.
>
> . . . . He was told several times that he needed to leave and to get out.  The Grievant ignored these requests.  To say the least, it put our Female porter in an uncomfortable position.  She was shocked, frightened and disgusted with his actions.  The Grievant's behavior was inexcusable and unforgivable.  We now have a frightened employee that continues to relive the events, night and day.

(Def. Ex. 14).

UPS clearly believed Sitko's version of the event over Plaintiff's version, and UPS was concerned about the effect that Plaintiff's behavior had on Sitko.  Plaintiff has not come

forward with any evidence to suggest that UPS' reasons had no basis in fact, or that they were not the actual factors motivating the decision. In fact, Plaintiff has agreed that it would be improper or unprofessional for a male employee to position himself in front of a urinal in such a way as to suggest to a female porter in the restroom that he was urinating. (Mock Dep. at 47-48). He also agreed that it would create a sexually disturbing and a harassing circumstance. (Mock Dep. at 49-50). He also agreed that Sitko was in fact upset as a result of his conduct in the restroom. (Mock Dep. at 61),

Neither has Plaintiff come forward with evidence to suggest that UPS' understanding of what occurred in the restroom was insufficient to justify the decision to terminate him. UPS treats the anti-harassment policy as a zero tolerance policy, meaning that violations of the policy are typically met with termination. (Brockhaus Dep. at 14; Anti-Harassment Policy, Def. Ex. 6).

Plaintiff has failed to make out a prima facie case of gender discrimination. In addition, Plaintiff has not come forward with any evidence to suggest that UPS's stated reason for terminating Plaintiff was a pretext for gender discrimination. Accordingly, UPS's motion to dismiss and for summary judgment will be granted.

An order and judgment consistent with this opinion will be entered.


Date:   November 18, 2005          /s/ Robert Holmes Bell
                                   ROBERT HOLMES BELL
                                   CHIEF UNITED STATES DISTRICT JUDGE